UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

PATRICIA A. KING,                    *

PLAINTIFF                            *

                                     *

V.                                   *        CIVIL ACTION NO: 11-cv-001270-RWT

                                     *

PFIZER PHARMACEUTICAL                *
COMPANY, INC.,
                                     *

DEFENDANT                            *

## RESPONSE TO MOTION TO DISMISS

While inartfully stated, Plaintiff's complaint does state sufficient facts to withstand Defendant's Motion to Dismiss. Plaintiff's failure to state in detail the actions of Defendant that resulted in her injury and Defendant's liability for that injury should not preclude the Court from allowing Plaintiff an opportunity to more fully outline the factual and legal basis for her claim.

Under Maryland Rule 2-501(a), summary judgment is only appropriate where there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Therefore a motion for summary judgment should be denied where the opposing party has shown that "there is a genuine dispute as to a material fact by proffering facts which would be admissible as evidence." Beatty v. Trailmasters Products, Inc., 330 Md. 726, 737 (1993). "A material fact is a fact

14  the resolution of which will somehow affect the outcome of the case." Carter v.
15  Aramark Sports and Entertainment, 153 Md.App. 210, 224 (2003) (quoting
16  Sterling v. Johns Hopkins Hosp., 145 Md.App. 161, 167 (2002), cert. denied, 371
17  Md. 264 (2002)).
18
19  "When ruling on a motion for summary judgment, a court must view the facts,
20  including all inferences drawn therefrom, in the light most favorable to the
21  opposing party." Carter, 153 Md.App. at 224, (citing Sterling, 145 Md. App. at
22  168, quoting Jones v. Mid-Atlantic Funding Co., 362 Md. 661, 676 (2001)). "The
23  moving party bears the burden of establishing the absence of a genuine issue of
24  material fact." Carter, 153 Md.App. at 224, (citing Sterling, 145 Md.App. at 168,
25  citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)), therefore the
26  Defendant must show the absence of disputed facts. Furthermore, the standard
27  is such that the trial court is not to draw inferences in favor of the moving party.
28  Rather, if the facts are undisputed, but these facts "are susceptible of more than
29  one permissible inference, the choice between those inferences should not be
30  made as a matter of law." Carter, 153 Md.App. at 225, (citing, Porter v. General
31  Boiler Casing Co., 284 Md. 402, 413 (1979), quoting Fenwick Motor Co. v.
32  Fenwick, 258 Md. 134, 138 (1970)).
33
34                          I. <u>Issues of Material Fact</u>
35  Plaintiff's complaint, while not explicitly stated, inherently alleges a failure to warn
36  by Defendant of the dangers of taking Lipitor. Defendant's warning was

37  inadequate regarding the side effects of Lipitor. Following the onset of the
38  extreme muscle pain and weakness, Plaintiff sought information that she had not
39  had access to at a time when its importance could be evaluated. Her
40  conversations with her treating physician included questions about leg pain and
41  its relationship to the side effects of Lipitor but she was assured that such side
42  effects were extremely rare and not preceded by mild or moderate pain.
43
44  In addition Defendant's promotion, marketing, and advertising to physicians of
45  Lipitor outside the FDA guidelines (See Ex. A, B, C, D, E), undermine the role of
46  the "learned intermediary" and Defendant's reliance on it warning labels for
47  protection as a matter of law.
48
49      II. The Lipitor Warning Label(s) Were Not Adequate as a Matter of Law
50  In March 2009, the U.S. Supreme Court held in Wyeth v. Levine, 555 U. S.
51  _____ (2009), that approval by the Food and Drug Administration (FDA) of
52  warnings on the drug's label do not provide Wyeth (the pharmaceutical
53  manufacturer) with a complete defense to tort claims. The decision stated that
54  "[i]n keeping with Congress' decision not to pre-empt common-law tort suits, it
55  appears that the FDA traditionally regarded state law as a complementary form
56  of drug regulation. The FDA has limited resources to monitor the 11,000 drugs on
57  the market,[1] and manufacturers have superior access to information about their

---

[1] "In 1955, the same year that the agency approved Wyeth's Phenergan application, an FDA advisory committee issued a report finding "conclusively" that "the budget and staff of the Food and Drug Administration are inadequate to permit the discharge of its existing responsibilities for the protection of the American public." Citizens Advisory Committee on the FDA, Report to the Secretary of Health, Education, and Welfare, H. R. Doc. No. 227, 84th Cong., 1st Sess., 53.

58  drugs, especially in the post marketing phase as new risks emerge. State tort
59  suits uncover unknown drug hazards and provide incentives for drug
60  manufacturers to disclose safety risks promptly. They also serve a distinct
61  compensatory function that may motivate injured persons to come forward with
62  information. Failure-to-warn actions, in particular, lend force to the FDCA's
63  premise that manufacturers, not the FDA, bear primary responsibility for their
64  drug labeling at all times. Thus, the FDA long maintained that state law offers an
65  additional, and important, layer of consumer protection that complements FDA
66  regulation.[1][2] The agency's 2006 preamble represents a dramatic change in
67  position. " (pp. 25-26)   A shift in position that the Court believed did not merit
68  deference. (p. 24)
69
70  Therefore FDA approval alone is not sufficient for Defendant's claim that its
71  warning was adequate as a matter of law.
72

---

Three recent studies have reached similar conclusions. See FDA Science Board, Report of the Subcommittee on Science and Technology: FDA Science and Mission at Risk 2, 6 (2007), online at http://www.fda.gov/ohrms/dockets/ac/07/briefing/2007-4329b_02_01_FDA%20Report%20on%20Science%20and%20Technology.pdf (all Internet materials as visited Feb. 23, 2009, and available in Clerk of Court's case file) ("[T]he Agency suffers from serious scientific deficiencies and is not positioned to meet current or emerging regulatory responsibilities"); National Academies, Institute of Medicine, The Future of Drug Safety: Promoting and Protecting the Health of the Public 193–194 (2007) ("The [FDA] lacks the resources needed to accomplish its large and complex mission . . . . There is widespread agreement that resources for postmarketing drug safety work are especially inadequate and that resource limitations have hobbled the agency's ability to improve and expand this essential component of its mission"); GAO, Drug Safety: Improvement Needed in FDA's Postmarket Decision-making and Oversight Process 5 (GAO–06–402, 2006), http://www.gao.gov/new.items/d06402.pdf ("FDA lacks a clear and effective process for making decisions about, and providing management oversight of, postmarket safety issues"); see also House Committee on Oversight and Government Reform, Majority Staff Report, FDA Career Staff Objected to Agency Preemption Policies 4(2008) ("[T]he Office of Chief Counsel ignored the warnings from FDA scientists and career officials that the preemption language [of the 2006 preamble] was based on erroneous assertions about the ability of the drug approval process to ensure accurate and up-to-date drug labels").

[2] "See generally Brief for Former FDA Commissioners Drs. Donald Kennedy and David Kessler as *Amici Curiae*; see also Kessler & Vladeck, A Critical Examination of the FDA's Efforts To Preempt Failure-To-Warn Claims, 96 Geo. L. J. 461, 463 (2008); *Bates v. Dow Agrosciences LLC*, 544 U. S. 431, 451 (2005) (noting that state tort suits "can serve as a catalyst" by aiding in the exposure of new dangers and prompting a manufacturer or the federal agency to decide that a revised label is required).

## III Argument

Defendant had repeatedly been warned by the FDA regarding its direct-to-consumer (DTC) advertising for Lipitor that was in violation of the Federal Food, Drug, and Cosmetic Act (FFDCA). (See Ex. A)  In 2010 Pfizer was warned by the FDA for its failure to submit Adverse Drug Experience (ADE) reports to the FDA as required by 21 CFR 314.80c specifically listing Lipitor among the products. Pfizer failed to submit reports of adverse drug experiences to the FDA within the 15 calendar days as required by 21 CFR 314.80 c (1)(i). Delays in reporting adverse events related to Lipitor were 1141 and 1102 days. (See Ex. B)

In 2009 Pfizer was party to the largest health care fraud settlement in the history of the Justice Department. (See Ex. C) While the criminal and civil penalties in this case were related to Pfizer's promotion of FDA approved drugs for "off label" use, i.e. any use not specified in an application and approved by FDA, Justice Department officials recognized that when manufacturers undermine the FDA's rules, they interfere with a doctor's judgment and can put patient health at risk. (See Ex. C, Ex. D)

In September 2010 the Justice Department filed a Statement of Interest in the case United States of America ex rel, Dr. Jesse Polansky v. Pfizer, Inc. (EDNY 04-cv-0704). (See Ex. E) Dr. Polansky alleged that Pfizer sales representatives were instructed to promote Lipitor therapy for patients outside the risk categories

96  and cutpoints set forth in the National Cholesterol Education Program Guidelines
97  and to minimize the side effects of the drug.  According to National Health and
98  Nutrition Examination Survey,  the off-label use for Lipitor has increased from
99  9.4% in 2001 to 24.7% in 2007.   According to data from Pfizer's own websites,
100 Defendant spends an average of $193,000 per quarter in payments to physicians
101 in Maryland alone.  While this does not suggest any professional wrong doing on
102 the part of the physicians,  "the pharmaceutical industry would not employ the
103 army of sales representatives who promote their products if these sales efforts
104 had no effect on physician practices." (See Ex. E, p. 9)
105
106 The Defendant is considered an expert in its field, and as such it has a continuing
107 duty to keep abreast of knowledge regarding its products and take all reasonable
108 steps to update medical professionals on their potential adverse effects.
109 Information from the FDA and the Department of Justice concludes the
110 Defendant used its position as expert to expand sales rather than safeguard the
111 health of patients. This resulted in injury to the Plaintiff.
112
113 Plaintiff has stated a claim upon which relief can be granted and Defendant's
114 label was not adequate as a matter of law.  The Defendant's arguments fail
115 because,
116 1. while the Plaintiff's complaint may have been incomplete, implicit within the
117 facts presented is a claim of failure to warn by the Defendant.; and

118  2. the recent U.S. Supreme Court decision Wyeth v. Levine, 555 U.S. _____
119  (2009) permits a Plaintiff to challenge the adequacy of Defendant's warning label
120  even when approved by the FDA.

121

122  IV <u>Conclusion</u>

123  Therefore Defendant's Motion for Dismissal with prejudice should not be granted.

124

125  If the Court nevertheless believes that Plaintiff's complaint does not adequately
126  state a claim upon which relief can be granted, then her complaint should be
127  dismissed but without prejudice.

128

129  Respectfully submitted,

130  *[signature: Patricia A. King]*

131

132  Patricia A. King
133  5900 Forest Road
134  Cheverly, MD  20785-2946
135  301-341-1029
136  beautyunderfoot@verizon.net

137

138

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2011, I filed the foregoing Response to Motion to Dismiss with the Clerk of the Court and served a copy of the foregoing upon the Defendant/Attorneys for the Defendant Pfizer, Inc. by U.S. First Class Mail, certified, postage prepaid:

Richard M. Barnes
Derek M. Stikeleather
Goodell, DeVries, Leech & Dann, L.L.P.
One South Street – 19th Floor
Baltimore, MD 21202

Patricia A. King
Plaintiff